UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

| | |
|---|---|
| SAGINAW INDUSTRIAL CENTER, INC., | Case No. 08-21163-dob |
| | Chapter 7 Proceeding |
| Debtor. | Hon. Daniel S. Opperman |

_____/
SAGINAW INDUSTRIAL CENTER, INC.,

    Plaintiff,

v.                                                    Adversary Proceeding
                                                    Case No. 08-2069-dob

INDUSTRIAL SERVICES GROUP, INC.,
a Michigan corporation, HESS STREET LEASING,
LLC, a Michigan limited liability corporation,
MISTEQUAY GROUP, LTD, a Michigan
corporation, JAMES J. SHINNERS, Individually,
R. JAMES PAAS, Individually, and CITIZENS BANK,
a Michigan banking corporation,

    Defendants.
_____/

OPINION REGARDING DEFENDANTS'
MOTION FOR DISMISSAL AND/OR FOR SUMMARY JUDGMENT

       Defendants, Industrial Services Group, Inc. ("ISG"), Hess Street Leasing, LLC ("Hess"), Mistequay Group, Ltd. ("MGL"), James Shinners, and R. James Paas (collectively "Defendants") move for dismissal of the remaining three counts in Plaintiff-Debtor's Complaint for: (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), (3) failure to state a claim pursuant to Rule 12(b)(6), and (4) summary judgment pursuant to Rule 56. Plaintiff opposes Defendants' request. The Court conducted a hearing on Defendants' motion on May 13, 2011, and took this matter under advisement. Because Defendants challenge whether the Court has subject matter jurisdiction over the remaining claims, that issue will be addressed first.

-1-

PROCEDURAL BACKGROUND

Plaintiff filed its Chapter 11 petition on April 18, 2008. On June 13, 2008, Plaintiff filed a nine count Complaint initiating this adversary proceeding. The Defendants, except for MGL, filed a Counterclaim against Plaintiff and a Third-Party Complaint against Plaintiff's principal on July 11, 2008. Those claims are not at issue here. On May 18, 2009, the Court signed an Order Dismissing Counts VIII and IX asserted by Plaintiff against former defendant Citizens Bank.

Plaintiff was unable to confirm a plan of reorganization and on February 26, 2010, the Court converted the case to Chapter 7. Trustee Randall L. Frank was appointed Chapter 7 trustee on March 8, 2010. On August 9, 2010, the Court entered an order granting the Trustee's motion to appoint special counsel to pursue Plaintiff's litigation against the Defendants. The Trustee has not moved to substitute or join as a Plaintiff.

On January 18, 2011, the Court entered an Order dismissing Counts I through IV of Plaintiff's Complaint. All that remains is Counts V through VII of the Complaint, as well as the Counterclaim and Third-Party Complaint.

FACTS

The issues involved in this proceeding relate back to a series of transactions in 2006 and 2007. ISG was formed on September 25, 2006, by several entities and individuals, including Plaintiff's sole shareholder, Louis D. Beer. The purpose was to combine the machining capability of another company owned by Beer, Saginaw Industrial Machining, Inc. ("SIM"), with an existing fabrication company known as Brothers Fabrication. To accomplish this, a multi-party transaction occurred on November 13, 2006. First, SIM surrendered its remaining assets, equipment, and accounts receivables to Citizens Bank under a foreclosure sale agreement. Second, Citizens Bank sold that equipment to ISG, which had obtained a loan from Citizens Bank for the purchase of the assets.

Third, Hess entered into a land contract with Plaintiff for a portion of the 1010 Hess Street industrial complex. The land contract required Hess to make specified payments for 39 months, after which either Hess or Plaintiff could request reappraisal to adjust the remaining balance. The land contract gave ISG the option to execute a corporate guaranty of Hess's payments by January 1, 2008. If no guaranty was given, Hess could then terminate the land

contract by surrendering possession, but was obligated to continue making payments while it occupied the property.

Finally, Plaintiff assigned its rights to the land contract payments, along with the existing lease payments from current lessees, to Citizens Bank. As alleged by Plaintiff, and as incorporated in the Complaint, the Assignment of Leases, Rents, and Land Contracts stated:

> "F. As an inducement to the Mortgagee's agreement to participate in the Foreclosure Sale Agreement and to forbear from demanding payment on the remainder of the Borrower's Liabilities, and to agree to reduce all of those liabilities to a Term Note, the Mortgagor has agreed to enter into this Assignment of Leases, Rents and Land Contracts to permit direct payment of the proceeds of such leases, rents and land contracts directly to Mortgagee to more completely secure the Mortgagee.
>
> In consideration of the obligations of the Mortgagor to the Mortgagee as set forth in the Mortgage and Assignment of Rents described above, which include but are not limited to the Mortgagor's Liabilities under the Mortgage Note dated this date, and its additional security for the payment and performance of all of the Liabilities described in the Mortgage, the Mortgagor does hereby assign, sell, transfer and set over unto Mortgagee, its successors and assigns, all the rents, profits and all other income under any and all existing and future leases (the "Leases") in which Mortgagor is lessor and land contracts under which the Mortgagor is vendor, and which demise to any person (the "Lessees") all or a portion of the real property situated in the City of Saginaw, Saginaw County, Michigan, and particularly described on attached Exhibit A (the "Premises"). A list of the current leases and land contracts are attached as Exhibit B."

Additionally, the Plaintiff agreed that Citizens Bank would collect all monies due to Plaintiff under the land contract:

> "4. RIGHT OF MORTGAGEE TO COLLECT RENT, LAND CONTRACT PAYMENTS AND OTHER SUMS DUE UNDER THE LEASES. The Mortgagee and Mortgagor shall give direct notice to all lessees and the land contract vendee to make payments directly to Mortgagee, or at Mortgagee's option, to a management agent, who shall (a) withhold the amount of the monthly payments necessary for the payment of taxes, insurance and maintenance of the property; (b) remit to Clarkston State Bank a monthly payment in the amount of interest only for 39 months, and thereafter, payments of principal and interest of $4,500.00 for the remainder of the term of the land contract . . ."

This assignment related to an existing mortgage given to Citizens Bank by Plaintiff and an earlier forbearance agreement entered into by those two entities. In addition, Defendants ISG,

Shinners, and Paas all executed limited guaranties in favor of Citizens Bank relating to the Hess land contract.

In 2007, ISG experienced financial difficulties and liquidated. In November of 2007, ISG held an auction for some of its assets, but other assets were sold to 3071 Bay Road Leasing, LLC ("Bay Road") on December 1, 2007.[1] The memorandum of agreement reflects that Bay Road paid ISG $250,000 for the equipment. Plaintiff's Exhibit 6, however, shows that disbursement of the $250,000 did not go to ISG; rather, it went to certain secured creditors of ISG: Brothers Fabrication, Thumb National Bank, and Citizens Bank. ISG received the remaining $200,000 owed in the form of payment to its secured creditors, Shinners and Paas, by a non-party, Mistequay ISG, Inc. It is this equipment and other assets, originally surrendered by SIM, that Plaintiff claims was fraudulently transferred by ISG.

Citizens Bank originally was a defendant in this action. While this case was a Chapter 11 proceeding, the Debtor-in-Possession, Saginaw Industrial Center, Inc., settled its differences with Citizens Bank. As part of this settlement, Citizens Bank retained the land contract rights transferred to it by Plaintiff. The May 18, 2009, Order of the Court states in pertinent part:

> "Notwithstanding the foregoing, including the dismissal of claims in the adversary proceedings, and disallowance of the Proof of Claims, Citizens Bank and Clarkston State Bank **shall retain all rights and remedies they may have to recover any indebtedness of the Debtor from the Hess Street Property**, and preserve all their lien rights in said property. However, in accordance with the terms of this Order and the parties' Settlement Agreement, Clarkston State Bank and Citizens Bank's claim against the Debtor may only be enforced against the Hess Street Property, not against any other assets in the bankruptcy estate.
>
> **IT IS FURTHER ORDERED** that the automatic stay is vacated with respect to the Hess Street Property, and Citizens Bank and Clarkston State Bank may proceed to enforce their liens or take such other action with respect to that property as may be permitted by applicable law, without regard to Section 362 of the Bankruptcy Code.

---

[1] While there is a bill of sale to Bay Road, Defendant Paas testified at his deposition that some equipment at issue was transferred to an entity called Mistequay ISG, Inc., formed in 2008 by Paas and Shinners. (see Defs.' Exh. 29, Paas Dep., pp. 14-15). However, as with the ISG-Hess arrangement, it appears the Mistequay ISG rented space from Bay Road, the owner of 3071 Bay Road. This factual unclarity of which entity actually received the equipment is not material to the analysis because Plaintiff's argument is that ISG never received any consideration for its transfer to Bay Road, not that some other entity received the assets instead of Bay Road.

-4-

DISCUSSION

*Whether this Court has subject matter jurisdiction*

Defendants' motion and supporting brief rest on different bases for dismissal. The introductory paragraph to Defendants' Motion states that they "are entitled to summary judgment pursuant to FR Civ P [sic] 12(b)(6) and FR Civ P [sic] 56." Defendants' introductory paragraph in its supporting Brief contains no reference to Federal Rule of Civil Procedure 12(b)(6). Instead, the Brief expressly states "that this Court lacks subject matter jurisdiction pursuant to FR Civ P [sic] 12(b)(1)," because Plaintiff's remaining claims are state law claims. Moreover, Defendants' law section of their Brief only cites Rule 12(b)(1) standards, and their first argument is titled: "This Court Lacks Subject Matter Jurisdiction." Defendants claim in the Brief that the remaining claims are "non-core" and, thus, there is a lack of subject matter jurisdiction. At the May 13, 2011, hearing, Defendants extended their argument by detailing the nature of each remaining count in the Complaint and demonstrated that each count failed in at least one aspect: Plaintiff cannot show that the Debtor and the corresponding estate were creditors of any of the Defendants. Continuing this argument, even if a viable cause of action existed, the bankruptcy estate would not recover any monies. According to Defendants, this Court lacks subject matter jurisdiction, or, as partially argued by Defendants, Plaintiff lacks standing to continue its claims in this case.

Plaintiff's opposition to Defendants' Motion is devoid of any argument related to the presence of subject matter jurisdiction in connection with Rule 12(b)(1). Plaintiff primarily focuses on the abstention argument, but in passing also claims that Defendants' answer "admitted this case to be a core proceeding and that jurisdiction was proper with this [C]ourt." In reply, Defendants state that subject matter jurisdiction is lacking because the only core claim in this case has been dismissed. The remaining counts based solely on state law claims, therefore, should be dismissed. Defendants cite case law for this last proposition that relies on the declining of supplemental jurisdiction by a federal district court under 28 U.S.C. § 1367.

While neither party directly and fully addresses whether at least "related to" jurisdiction exists, "[c]ourts may consider subject matter jurisdiction at any time and must dismiss an action if subject matter jurisdiction is lacking." *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 900 (Bankr. D. Del. 2010) (citing Fed. R. Civ. P. 12(h)(3)). The lack of full

analysis under Rule 12(b)(1) by the parties is not a hindrance because "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *Schrader v. Comm'r*, 916 F.2d 361, 362 (6th Cir.1990) ("While neither party addressed the issue of this Court's jurisdiction in its briefs and argument, we are obliged to raise it *sua sponte* whenever reason for inquiry exists."). Moreover, "[a] motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge because jurisdiction must be present before this Court may determine the validity of a claim." *MC Asset Recovery, LLC v. Commerzbank AG*, 441 B.R. 791, 801 (N.D. Tex. 2010).

Defendants have raised the issue of whether relief should be granted pursuant to Rule 12(b)(1). "The standard of reviewing a motion to dismiss pursuant to 12(b)(1) . . . turns on whether the defendant has made a 'facial' or 'factual' jurisdictional attack on the plaintiffs complaint." *Enterasys Networks, Inc. v. Mexmal Mayorista, S.A. de C.V., Int'l Bancshares Corp. (In re Dinastia, L.P.)*, 381 B.R. 512, 518-19 (S.D. Tex. 2007) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). In contrast, "[a] *factual* attack . . . is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations[.]" *Id*. (citation omitted). As explained by the Third Circuit:

> The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977) (quoted in full

in *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). In other words, "a 'factual' attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside the court's jurisdiction." *In re AE Liquidation, Inc.*, 435 B.R. at 900 (citation omitted).

Because Defendants have attached multiple documents outside the Complaint, including deposition testimony and other exhibits, the Court considers Defendants' motion a factual attack, rather than a facial attack. Therefore, "this Court is permitted to weigh the evidence, determine whether the facts support Plaintiff['s] allegations, and consequently decide whether this Court has subject matter jurisdiction over Plaintiff['s] claims." *United Gov't Sec. Officers of Am. v. Akal Sec., Inc.*, 475 F. Supp. 2d 732, 738 (S.D. Ohio 2006). "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *RMI Titanium Co.*, 78 F.3d at 1134 (quotes omitted).

"In determining the nature and extent of its subject matter jurisdiction, the Court must proceed through the Complaint on a claim-by-claim basis." *Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309, 322 (Bankr. D. Del. 2005). "'[T]he word 'proceeding'[in § 1334] must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action.'" *Beneficial Nat'l Bank USA v. Best Reception Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 945 (Bankr. E.D. Tenn. 1998) (citation omitted). None of the three remaining claims is a civil proceeding "arising under title 11" because none involves "a cause of action created or determined by a statutory provision of title 11" so as to be core proceedings. *Swain v. United States (In re Swain)*, 437 B.R. 549, 553 (Bankr. E.D. Mich 2010). Nor are they "arising in" a Title 11 case because they allege only state law claims, which "are not based on any right expressly created by Title 11" and could "exist[ ] outside of the bankruptcy" context. *McDaniel v. ABN AMRO Mortg. Grp.*, 364 B.R. 644, 647 (S.D. Ohio 2007) (citation and quotes omitted). Thus, the only question is whether the remaining claims satisfy at least the Court's "related to" jurisdiction under 28 U.S.C. § 1334(b).

"'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Swain*, 437 B.R. at 554 (quoting *Mich.*

-7-

*Emp't Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1140 (6th Cir.1991)). "Within this broad definition, a claim is 'related to' the bankruptcy if any recovery gained as a result of a successful action would have resulted in an asset available for distribution to the debtor's creditors." *Morris v. Zelch (In re Reg'l Diagnostics, LLC)*, 372 B.R. 3, 22 (Bankr. N.D. Ohio 2007) (citation omitted). "Thus, if the outcome of a dispute could not have any effect on the bankruptcy case - e.g., by affecting the property to be administered, the total assets to be distributed or the total claims to be paid - then a bankruptcy court may not hear the dispute." *Adams v. Prudential Sec. (In re Found. for New Era Philanthropy)*, 201 B.R. 382, 389 (Bankr. E.D. Pa. 1996). The Court will apply this analysis to each remaining Count.

Count V - Fraudulent Transfer

Count V of Plaintiff's Complaint is premised on Michigan's fraudulent transfer statute and alleges that Defendants Hess and ISG "were indebted to" Plaintiff. In particular, Plaintiff claims Hess owes it money on the land contract and ISG "pursuant to its guaranty . . . ." Plaintiff further alleges that Defendants Shinners and Paas provided limited guaranties of Hess's obligations under the land contract. The main allegation supporting Plaintiff's claim is that "ISG sold a portion of the assets originating with SIM" for excess proceeds and then transferred those proceeds, along with "unsold equipment and SIM's accounts receivables," to either MGL, Shinners, or Paas "without consideration." Plaintiff alleges both actual and constructive fraud. A close examination of the Michigan statute leads to the conclusion that Plaintiff cannot bring this claim because it is not a "creditor" of ISG, as defined by Michigan law, and because the evidence supports the Defendants' position that the assets at issue were never transferred to any named Defendant. Thus, the outcome of this claim could not have any conceivable effect on Plaintiff's bankruptcy estate.

First, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor" if the transfer was done with either actual or constructive fraud. Mich. Comp. Laws 566.34. Michigan law defines a "creditor" as one who has a "claim," a "debtor" as one "who is liable on a claim[,]" and a "claim" as the "right to payment. . . . ." Mich. Comp. Laws 566.31(c) - (e). As Defendants argue, Plaintiff has not established that ISG is a "debtor" to Plaintiff. The land contract was between Plaintiff and Hess. ISG was not a party. The guaranty Plaintiff relies on to claim that ISG, and by extension, Shinners and Paas, is indebted to it was executed in favor

of Citizens Bank, not Plaintiff. That guaranty expressly states that ISG is guaranteeing payment to Citizens Bank of any debt related to Hess's default. At best, Plaintiff's allegations convey an unstated and unproven assumption that Hess and ISG were intertwined so as to be considered one entity. But because Plaintiff had no "claim" – i.e., a "right to payment" – against ISG, the fraudulent transfer claim cannot stand.

Second, the allegation that Shinners, Paas, and MGL received the assets is belied by Plaintiff's own response to Defendants' motion. In its response to the Rule 56 portion of Defendants' motion, Plaintiff points to several documents provided to it by Defendants that show the equipment at issue was sold to Bay Road. Plaintiff also discusses the seemingly conflicting deposition testimony of Paas where he states that the equipment went to a non-party entity known as Mistequay ISG, Inc. No factual basis exists for Plaintiff's allegations that Defendants MGL, Shinners, or Paas received the alleged fraudulently transferred equipment and other assets. Thus, another essential element of a fraudulent transfer claim is missing. Because Plaintiff cannot bring the claim to avoid a fraudulent transfer, the claim cannot have any conceivable effect on Plaintiff's estate, *see, e.g.*, *Akal Sec., Inc.*, 475 F. Supp. 2d at 738, and therefore there is no "related to" jurisdiction.

Another basis for finding a lack of subject matter jurisdiction flows from the above; namely, that Plaintiff lacks standing to assert Count V as pled.[2] *See Fry v. United States (In re Twin Lakes Real Estate, LLC)*, 2007 WL 2964664, at *3 (Bankr. D. Utah Apr. 27, 2007) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Courts lack jurisdiction over adversary proceedings if the Plaintiff does not have standing to raise the causes of action at issue." If, under the plan language of Mich. Comp. Laws 366.34, Plaintiff is not a "creditor" of ISG, then there is no statutory basis for this claim by Plaintiff against ISG. The applicable Michigan statute requires a debtor-creditor relationship, and the lack thereof precludes bringing a suit. The allegations, moreover, do not reveal how Plaintiff was injured by ISG. Thus, Plaintiff cannot show injury in fact, an Article III standing requirement. Because Plaintiff lacks standing to bring the claim, this Court lacks subject matter jurisdiction over the claim.

---

[2] Defendants argue in their brief, but not in the subject matter jurisdiction section, that Plaintiff "has no standing" to bring Count V based on the lack of any "contractual relationship" with the Defendants related to the equipment or assets.

Count VI - Breach of Fiduciary Duty by Shinners and Paas as to ISG

Much of the above analysis in Count V is applicable to Count VI. Plaintiff's Complaint alleges that Shinners and Paas, as directors and officers, breached a duty of care by permitting the transfer of the equipment at issue and other assets for inadequate consideration. Plaintiff again alleges that it was a creditor of ISG. Plaintiff relies on Mich. Comp. Laws 450.1541a, Michigan's version of the 'business judgment rule.'[3]

Similar to the second basis for dismissing Count V, Plaintiff lacks standing under Michigan law to bring a breach of fiduciary duty claim against the directors and officers of ISG. Defendants argue, albeit not in the subject matter jurisdiction section of their brief, that Plaintiff "lacks standing to bring a breach of fiduciary duty claim against Paas and Shinners on behalf of ISG." Michigan law supports this argument. "[A] plaintiff in a Section 450.1541a action is a corporation suing for breach of a duty to the corporation or a shareholder suing derivatively on behalf of the corporation." *Estes v. Idea Eng'g & Fabrications, Inc.*, 649 N.W.2d 84, 93 (Mich. Ct. App. 2002). Plaintiff's only authority in the complaint for the count is a 1984 New York bankruptcy court decision based on 11 U.S.C. § 548, *In re Carousel Candy Co.*, 38 B.R. 927 (Bankr. E.D. N.Y. 1984). That case is distinguishable because at issue there was the debtor's insiders' fraudulent transfers of debtor's assets following various sales conducted by the insiders. Here, Plaintiff brings its claim not against its own insiders or directors/officers, but against a separate corporation's directors and officers.

Furthermore, Plaintiff's allegations are that ISG did not receive adequate consideration. However, Defendants attach multiple exhibits showing how secured creditors of ISG received the funds as satisfaction for ISG's debt without limitations. Defendants attached copies of promissory notes, security agreements, UCC-1 financing statements, miscellaneous agreements, closing statements, corporate records, balance sheets, and internal documents to support their position. The Court noted the nature of these documents and gave consideration to the weight

---

[3] Mich. Comp. Laws 450.1541a states in pertinent part:
(1) A director or officer shall discharge his or her duties as a director or officer including his or her duties as a member of a committee in the following manner:
   (a) In good faith.
   (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances.
   (c) In a manner he or she reasonably believes to be in the best interests of the corporation.

-10-

of this evidence. Plaintiff's opposition simply reiterates its position that the documentary evidence supplied by Defendants does not show that ISG itself received any of the money from the sale of the equipment. Plaintiff fails to rebut Defendants' argument that the payment of secured creditors is in effect the payment to ISG.

Under Michigan law, Plaintiff cannot bring this action because it is not ISG or a shareholder of ISG suing derivatively. This claim can have no conceivable effect on Plaintiff's bankruptcy estate nor result in recovery of assets for distribution to creditors. Therefore, the Court does not have "related to" jurisdiction over Count VI.

Count VII - Continuing enterprise or successor liability of Defendant MGL

Plaintiff's Complaint alleges that Defendant MGL "is an alter ego of ISG" and that MGL is the successor to ISG's business. Plaintiff further alleges that "[a]ll, or substantially all" of ISG assets went to and are used by MGL. Plaintiff's theory of recovery is based on *Pearce v. Scheider*, 217 N.W. 761 (Mich. 1923). Defendants deny that MGL is the successor or continuance of ISG. Defendants point to deposition testimony by Paas that MGL was formed in 1991 to engage in precision machining and light fabrication for specific industries, whereas ISG performed less precise machining with a different target industry. Defendants also note that the equipment sold by ISG went to Bay Road, which leased space to Mistequay ISG, Inc., with the implication being that Mistequay ISG, Inc. actually used the equipment for similar precision machining for the military.

First, similar to the above counts, Plaintiff tries to allege it is a creditor of MGL thereby permitting it to bring this action against MGL. As Defendants point out, however, Plaintiff has not alleged any direct contractual relationship with MGL. Plaintiff appears to still rely on the unstated and unsupported assumption that all the Defendants are sufficiently related through common ownership to be considered a single entity. However, Plaintiff presents no evidence to support its implied argument.

Second, Plaintiff's reliance on *Scheider* is unpersuasive. In that case, all the shareholders of the original corporation formed a second corporation for the express purpose, as stated in the second corporation's articles of incorporation, of taking over all the assets of the original corporation and continuing its business. Plaintiff points to no similar expressed purpose of MGL. This is likely impossible given that MGL was incorporated some 15 years before ISG and conducted a different business than Plaintiff. Further, when ISG closed its

doors it auctioned off nearly 80% of its assets and sold the remaining roughly 20% to Bay Road. Under *Scheider*, ISG would have had to sell its "entire property" to MGL, with the effect being that ISG's creditors are left out. However, the sale of ISG assets to Bay Road resulted in exactly the opposite – ISG paid its secured creditors. In a Chapter 7 bankruptcy estate, payments to creditors are routinely reviewed by the Trustee to determine if an actionable claim for a preference or fraudulent conveyance exists. While a Bankruptcy Trustee may properly question the payment of ISG creditors, payments such as the ones identified in this case occur. The only method to apply bankruptcy law to this situation is to have ISG seek protection under the Bankruptcy Code or force ISG into bankruptcy. Absent that request or action, the Court cannot apply bankruptcy principles to a non-debtor. Thus, *Scheider* has no bearing on the facts of this case.

The facts here do not suggest that successor or continuing enterprise liability exists. Under Michigan law, successor liability deals with merger-type transactions between predecessor and successor corporations and is limited to commercial contexts, such as where the successor breaches a lease entered into by the predecessor. *See Lakeview Commons Ltd. Partnership v. Empower Yourself, L.L.C.*, __ N.W.2d __, 2010 WL 3604673, at *1 (Mich. Ct. App. Sept. 16, 2010) (citation omitted). There is no evidence of any merger of stock or cash purchase by MGL of ISG. Therefore, successor liability is not a viable claim.

In addition, under Michigan law, "continuity of enterprise" liability requires:

> (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation.

*Id.* (citation omitted). Plaintiff's Complaint does not allege any of these requirements. In contrast, there is evidence from Defendants that ISG sold its assets to various entities and none accepted the obligations of ISG so as to seamlessly continue its business or hold themselves out to the world as ISG's successor. Therefore, there is not a claim for "continuity of enterprise."

Like the other claims, the continuing enterprise or successor liability claim cannot have any conceivable effect on Plaintiff's bankruptcy estate. It will not result in further assets for

distribution to its creditors. Therefore, the Court lacks "related to" jurisdiction over the claim.

In summary, "related to" jurisdiction does not exist for Plaintiff's claims. Either due to a lack of standing or the fact that the claims pled simply cannot be brought, the claims will not have any conceivable effect on Plaintiff's estate. The claims will not alter Plaintiff's rights, obligations, or freedom of action, nor impact the handling of the estate. Therefore, under Rule 12(b)(1), the Court grants Defendants' motion to dismiss Plaintiff's remaining claims against the Defendants for lack of subject matter jurisdiction.

Given the dismissal of the remaining counts of Plaintiff's Complaint, the Court will not address the remaining arguments raised by the parties. Counsel for Defendants is requested to draft an appropriate Order and submit that Order to the Court after approval by Plaintiff's counsel or presentment as allowed by the applicable local bankruptcy rule.

*Not for Publication*

```
Signed on July 25, 2011
                                      /s/ Daniel S. Opperman
                                  Daniel S. Opperman
                                  United States Bankruptcy Judge
```